**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 15-50141 |
| v. | D.C. No. 3:14-cr-00653-BEN |
| CARLOS HERRERA-RIVERA, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Submitted April 6, 2016[*]
Pasadena, California

Filed August 12, 2016

Before: A. Wallace Tashima, Barry G. Silverman and
Susan P. Graber, Circuit Judges.

Opinion by Judge Silverman;
Partial Concurrence and Partial Dissent by Judge Graber

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

---

### Criminal Law

The panel affirmed a conviction for possession of methamphetamine with intent to distribute, vacated the sentence, and remanded for further proceedings.

The panel held that the district court did not abuse its discretion in denying an evidentiary hearing on the defendant's motion to suppress, where the motion was not supported by a declaration from someone with knowledge who was available for cross-examination at a hearing on the motion, as required by the Southern District of California's Local Criminal Rule 47.1.

The panel held that the defendant's contention that the district court erred in applying *Batson*'s framework on his challenge to the government's striking the only African-American juror is not supported by the record.

The panel held that the district court did not clearly err in denying a minor-role reduction at sentencing.

The panel held that the district court's failure, in applying an obstruction of justice enhancement, to explicitly find that the defendant's testimony was willful and material is plain error affecting the defendant's substantial rights.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Regarding the defendant's contention that the government failed to disclose its suspicion that the defendant was a long-time pedestrian narcotics smuggler, resulting in prejudice at trial and at sentencing, the panel held that there was no basis for reversal where counsel chose not to raise a valid objection on this purely factual question.

Judge Graber concurred in all respects except that she would affirm the enhancement for obstruction of justice because the defendant has not satisfied the requirements of plain error review.

**COUNSEL**

Thomas P. Matthews, Law Office of Thomas P. Matthews, San Diego, California, for Defendant-Appellant.

D. Benjamin Holley, Assistant United States Attorney; Peter Ko, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Laura E. Duffy, United States Attorney; Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

**OPINION**

SILVERMAN, Circuit Judge:

Carlos Herrera-Rivera appeals his jury trial conviction for possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and the 120-month sentence imposed by the district court. Herrera-Rivera contends that the district court erred by denying his request for an evidentiary hearing on his motion to suppress, denying his *Batson* challenge without conducting an appropriate *Batson* analysis, and denying a minor-role reduction. He further contends that the government withheld evidence, resulting in prejudice both at trial and at sentencing. We reject each of these contentions. However, we agree with Herrera-Rivera that the district court plainly erred by applying an obstruction of justice enhancement to his sentence without making the express findings required by *United States v. Castro-Ponce*, 770 F.3d 819 (9th Cir. 2014). Accordingly, we affirm the conviction, vacate the sentence, and remand for further proceedings consistent with this opinion.

## I.  Background

### A.  Facts

On February 13, 2014, an Intercalifornias bus was referred to secondary inspection at the Highway 86 Indio Border Patrol Station in Westmoreland, California. United States Border Patrol agents boarded the bus, performed an immigration inspection, and checked the bags in the overhead compartment to make sure that each belonged to someone on the bus. A few rows from the back of the bus, agents found

an unclaimed backpack.  Inside, they found six bundles wrapped in black electrical tape.  A subsequent laboratory analysis showed that the bundles contained more than a kilogram of methamphetamine.

Herrera-Rivera was sitting a few rows behind the bag and had crossed the United States-Mexico border earlier that morning.  Agents searched Herrera-Rivera's person, with his consent, and discovered black marks on his stomach that they believed were residue from electrical tape.  Agents also performed a search, with consent, of two cell phones they found in Herrera-Rivera's possession, that contained text messages appearing to arrange a rendezvous and payment for Herrera-Rivera's return trip to Mexico.

The Border Patrol agents arrested Herrera-Rivera and placed him in a holding cell.  A few hours later, Drug Enforcement Administration agents arrived at the Border Patrol Station, read Herrera-Rivera his *Miranda* rights, and interviewed him.  Herrera-Rivera told the agents that when he crossed the border that morning, he ran into a friend who gave him a cell phone and sixty dollars and told him to get on a bus to Calexico.  When Herrera-Rivera arrived in Calexico, his friend told him to get on the Intercalifornias bus.  Herrera-Rivera also told the agents that he believed there were narcotics on the bus because he knew his friend was involved in trafficking.

The government filed a one count information charging Herrera-Rivera with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

**B.  Motion to Suppress**

Herrera-Rivera filed a motion to suppress his statements, arguing that the Border Patrol and DEA agents conducted a deliberate two-step interrogation, in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004), and *United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006).  The government's response was supported by two declarations, the first signed by a Border Patrol agent and the second by a DEA agent, attesting to its version of the facts surrounding Herrera-Rivera's arrest. Herrera-Rivera, on the other hand, filed a declaration signed by his lawyer, stating that counsel believed the facts alleged in the motion were true, based on his conversations with Herrera-Rivera.

The district court denied Herrera-Rivera's motion to suppress without holding an evidentiary hearing.  The court ruled that it was not required to hold a hearing because Herrera-Rivera had failed to support his motion with a declaration by someone with knowledge who was available for cross-examination, as required by the Southern District of California's Local Criminal Rules.  The court then found, based on the agents' declarations, that Herrera-Rivera was not in custody when he was questioned by Border Patrol.  Thus, no *Miranda* warning was required, nor had there been any impermissible two-step interrogation.

**C.  Voir Dire**

Herrera-Rivera proceeded to trial.  At the close of voir dire, the government used a peremptory strike to remove

Juror 10[1] from the venire. Herrera-Rivera raised a *Batson* challenge, arguing that Juror 10 was the only African-American male in the jury pool. The government explained that it struck Juror 10 because it believed he might be sympathetic to the defense. In support, it stated that Juror 10 had been convicted of assault and that his mother, father, and brother were drug users. The district court denied the *Batson* challenge, saying that "it appears there is a nondiscriminatory basis for the challenge. It doesn't appear to be pretextual." The court later expanded on its ruling, saying:

> [J]ust to make sure we have a clear record, [defense counsel] had made a *Batson* challenge to the government's exclusion of Juror No. 10, I believe. It seemed to me that it was pretty clear that there was a prima faci[e] showing of race. He was the only black male juror in the pool, and [defense counsel] so pointed out. . . However, [the government] stated a race neutral – what I thought was a race neutral, nondiscriminatory basis for [the] challenge. And given the witness's answers, it appeared to me that the exclusion was not based on racial grounds, but rather based on his experiences in the past.

---

[1] In his brief, Herrera-Rivera claims that the government used peremptory strikes to remove two African-American jurors. This is incorrect. The record shows that there were two African-Americans in the jury pool, one male and one female. The government struck Juror 10, the male. It did not strike Juror 29, the female. Moreover, Herrera-Rivera raised only one *Batson* challenge in the district court.

**D. Trial**

The government's case-in-chief consisted, in large part, of the facts detailed above. Herrera-Rivera testified in his own defense, and told the jury the following: He left his home in Mexico on February 12, 2014 because he was having a fight with his wife. His plan was to go to Las Vegas to stay with his sister. He crossed the border on February 13, 2014, and was sent to secondary inspection and strip-searched. After crossing the border, he ran into his cousin, who gave him sixty dollars to help him get to his sister's home. Herrera-Rivera then boarded a bus to Los Angeles, where he could catch a connecting bus to Las Vegas.

Herrera-Rivera also told the jury that he did not know anything about the bag and that he did not make the incriminating statements to the DEA agents. His personal cell phone would not work in the United States and, consequently, he had borrowed the second phone from a friend. But he had not sent the incriminating text messages. Moreover, the black marks on his stomach were paint that he had gotten on his skin while painting a fence the day he left home.

The government was able to impeach parts of Herrera-Rivera's testimony, using his prior statements to the Border Patrol and DEA agents, statements he made during a second interview a few months after his arrest, and the testimony of a Border Patrol agent who claimed that Herrera-Rivera had not been strip-searched when he crossed the border.

On December 11, 2014, the jury found Herrera-Rivera guilty.

## E. Sentencing

The district court imposed sentence on March 23, 2015. At the outset of the sentencing hearing, the district court asked the parties whether Herrera-Rivera was entitled to a minor-role reduction. Herrera-Rivera had not specifically requested a minor-role reduction in his sentencing paper. However, when prompted, Herrera-Rivera's lawyer said that he would "defer to the court," that there was no direct evidence of possession, and that Herrera-Rivera was likely an intermediate figure tasked with transporting the methamphetamine from one point to another. The government opposed the reduction, arguing that the burden was on Herrera-Rivera to prove that he was a minor participant and that his word was not credible. Moreover, the government told the court that Herrera-Rivera "came to [the government's] attention and was on [its] radar because there was a look-out on him being a long-time pedestrian narcotics smuggler." When the district court observed that it was hearing this information for the first time, defense counsel interjected and said, "And, for the record, I didn't know of it, either. I know he crossed for work purposes daily, but I wasn't aware of any information that he was crossing drugs before." However, counsel did not raise any formal objection, move to strike, complain about a lack of discovery, seek a continuance, or anything of the sort. The district court denied the minor-role reduction, saying "I don't think that there is sufficient evidence before this court for the court to find that after looking at the totality of the circumstances, the defendant was substantially less culpable than the average participant."

The government then argued that an obstruction of justice enhancement was warranted because Herrera-Rivera had

committed perjury at trial. Defense counsel responded that the enhancement was not justified, as it would unfairly punish Herrera-Rivera for exercising his right to testify. The district court applied the enhancement, saying:

> [T]he defendant has the right to testify . . . and the defendant has a right to present a defense. But the defendant does not have a right to either attempt to mislead the court or to commit perjury or to obstruct the proceedings. And I recall his testimony. And I remember when he was testifying, thinking to myself that it was – to put it kindly, tenuous at best.

The district court calculated a guidelines range of 235–293 months and sentenced Herrera-Rivera to 120 months.

## II. Jurisdiction and Standards of Review

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's denial of Herrera-Rivera's request for an evidentiary hearing on his motion to suppress for an abuse of discretion. *See United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991) (per curiam). We review *de novo* whether the district court properly applied *Batson*. *See United States v. Alvarez-Ulloa*, 784 F.3d 558, 565 (9th Cir. 2015). A district court's minor-role determination is reviewed for clear error. *See United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192 (9th Cir. 2011). We ordinarily review a district court's factual findings for purposes of an obstruction of justice sentence enhancement for clear error. *See United States v. Castro-Ponce*, 770 F.3d 819, 821 (9th Cir. 2014). Because Herrera-Rivera did not object to the

district court's findings on the obstruction of justice enhancement, we review those findings for plain error. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Olano*, 507 U.S. 725, 732–37 (1993). Under the plain error standard of review, "reversal is warranted only where there has been (1) error; (2) that is plain; (3) that affects substantial rights; and (4) where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011). We agree with Herrera-Rivera that, under this standard, the district court's failure to make express factual findings to support the enhancement was plain error.

## III.   Discussion

### A.  The Motion to Suppress

Herrera-Rivera argues that the district court abused its discretion by denying his request for an evidentiary hearing on his motion to suppress. The Southern District of California's Local Criminal Rule 47.1 states that "[c]riminal motions requiring a predicate factual finding must be supported by declaration(s)." S.D. Cal. Crim. R. 47.1(g)(1). "Each declarant in support of and in opposition to criminal motions must be made available for cross-examination at the hearing of the motion." S.D. Cal. Crim. R. 47.1(g)(4). Furthermore, "[t]he court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." S.D. Cal. Crim. R. 47.1(g)(1).

Herrera-Rivera's motion was not supported by a declaration from someone with knowledge who was available

for cross-examination at a hearing on the motion. Rather, defense counsel filed his own declaration stating that he believed the facts alleged in the motion were true, based on his conversations with Herrera-Rivera. We have previously held that a declaration signed by counsel is insufficient to meet the requirements of the Central District of California's equivalent local rule,[2] *see Wardlow*, 951 F.2d at 1116, and we follow that holding today. Because Herrera-Rivera failed to meet the requirements of Rule 47.1, there were no contested issues of fact, properly joined, that necessitated holding an evidentiary hearing to resolve the motion. Thus, the district court did not abuse its discretion by denying the request for a hearing.

## B.  The Batson Challenge

Herrera-Rivera argues that the district court erred by failing to conduct step three of the required three-step *Batson* analysis. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). In ruling on a *Batson* challenge, a district court must apply a three-part framework:

---

[2] The Central District of California's equivalent local rule states: "A motion to suppress shall be supported by a declaration on behalf of the defendant, setting forth all facts then known and upon which it is contended the motion should be granted. The declaration shall contain only such facts as would be admissible in evidence and shall show affirmatively that the declarant is competent to testify to the matters stated therein." *Wardlow*, 951 F.2d at 1116 n.1 (alteration omitted) (quoting Local Rules of Practice for the United States District Court, Central District of California R. 9.2 (1985)).

>First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016). "The court cannot simply accept the prosecutor's reasons as facially neutral and stop there; it must make an explicit determination at the third step." *Alvarez-Ulloa*, 784 F.3d at 565.

Herrera-Rivera's contention that the district court erred in applying *Batson's* framework is not supported by the record. On the contrary, the district court explicitly found that the government's proffered reasons for striking the only African-American male from the panel were not pretextual and that the strike was based on the juror's having a criminal history and having family members who used drugs, rather than on his race. There is no evidence in the record that the government was concerned about Juror 10's race, and Herrera-Rivera cannot point to panelists not struck who were similarly situated to Juror 10. *See id*. at 567 (noting that "failure to strike similarly situated venire members can ground a conclusion that purposeful discrimination occurred"). Although several potential jurors reported that they had family members who used drugs, none revealed that they had been convicted of a crime. Thus, the government's concern that Juror 10 might be sympathetic to the defense due to his prior conviction and relationship to drug users did not

apply with equal force to any juror who was permitted to serve.

## C.  The Minor-Role Reduction

Herrera-Rivera argues that the district court erred by denying a minor-role reduction.  A defendant qualifies for a minor-role reduction if he is "substantially less culpable than the average participant."  *Rodriguez-Castro*, 641 F.3d at 1193.  "In addition, it is well established that the defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense."  *Id*. (internal quotation marks and alteration omitted).

The district court did not clearly err by finding that Herrera-Rivera failed to carry his burden of showing that he was entitled to a minor-role reduction.  As is noted above, Herrera-Rivera did not request a minor-role reduction at sentencing.  Rather, the district court raised the issue on its own.  And, when prompted by the court, defense counsel stated only that he would "defer to the court," that there was no direct evidence of possession, and that Herrera-Rivera was likely an intermediate figure tasked with transporting the methamphetamine from one point to another.  In light of counsel's sparse presentation, we agree with the district court that there was insufficient evidence to support a finding that Herrera-Rivera was "substantially less culpable than the average participant."  *Id*.

## D.  The Obstruction of Justice Enhancement

Herrera-Rivera argues that the district court erred by enhancing his sentence without making express findings on each element of obstruction of justice, as required by *United*

*States v. Castro-Ponce*, 770 F.3d 819 (9th Cir. 2014). A defendant's base offense level may be increased by two-levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice. . . " U.S.S.G. § 3C1.1. However, for perjury to be deemed obstruction, the district court must make express findings that: "(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." *Castro-Ponce*, 770 F.3d at 822.

In *Castro-Ponce*, we held that a district court's failure to make the required findings on each element of perjury is reversible error.

> Absent a requirement of express findings on all three prongs necessary for perjury to amount to obstruction of justice, we would have to speculate about the district court's legal conclusions on obstruction. Rather than engage in such speculation, we require the fact-finder to make those determinations explicitly for our review.

*Id*. Where the district court fails to make express factual findings of perjury, the defendant's substantial rights to take the stand and testify in his own defense may be chilled, calling the fairness and integrity of the proceedings into question. As we explained in *Castro-Ponce*:

> Obstruction of justice is a serious charge, and requires serious proof. To enhance a guidelines sentencing range based on obstruction of justice, which often results in more time served in prison, a district court

must make explicit findings that not only did the defendant give false testimony, but also that the falsehoods were willful and material to the criminal charges.  We decline to adopt a more forgiving standard, which could have the unintended consequence of chilling a criminal defendant's willingness to take the stand and give testimony in his or her defense.  To require explicit findings on elements needed for the obstruction of justice enhancement helps ensure reliability and reviewability of a sentencing decision.

*Id*. at 823.

A good argument can be made that *Castro-Ponce* applies too rigid of a rule.  However, whatever one might think of the correctness of *Castro-Ponce*, no one can doubt its clarity.  In fact, it could not be clearer: the district court must make express findings on each element of perjury, in the first instance, before applying an obstruction of justice enhancement based on a defendant's testimony at trial.  And as a three-judge panel, we are bound by that holding.  *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).  Moreover, we note that our approach today is consistent with our precedents prior to *Castro-Ponce*, *see United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103–04 (9th Cir. 2007) (holding that "we must remand where the district court failed to make a finding on" materiality), as well as the approach taken by some of our sister circuits.  *See United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014) (reasoning that presuming that the elements of perjury are satisfied in the absence of specific findings in the district court raises the risk of "undermining a criminal defendant's

constitutional right to testify on his own behalf"); *United States v. Massey*, 48 F.3d 1560, 1573–74 (10th Cir. 1995) (requiring the district court to make findings on willfulness and materiality).

Herrera-Rivera argued that the obstruction of justice enhancement should not be applied to his sentence because it would unfairly punish him for exercising his right to testify. The district court rejected this argument and applied the enhancement, stating that it remembered Herrera-Rivera's trial testimony and that it was "to put it kindly, tenuous at best." Even if we were to deem this an express finding that Herrera-Rivera gave false testimony, the fact would remain that the district court failed to explicitly find that the testimony was also willful and material. We require the district court to make express findings as to each element of perjury in order to preserve the fairness and integrity of the sentencing process. Failure to do so here is plain error because, as we have explained above, it affects Herrera-Rivera's substantial rights. For these reasons, we conclude that the sentence must be vacated.

The government concedes the error. It argues, however, that the error did not affect Herrera-Rivera's substantial rights because the district court ultimately imposed a sentence below the advisory Guidelines range. We reject this contention. As the Supreme Court recently held, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Because we see no reason to depart from *Molina-Martinez*, we vacate the

obstruction of justice enhancement and remand for further proceedings consistent with this opinion.

### E.  Undisclosed Evidence

Herrera-Rivera contends that the government failed to disclose its suspicion that he was a long-time pedestrian narcotics smuggler, resulting in prejudice at trial and at sentencing.  The government responds that the challenged evidence was, in fact, disclosed.  This dispute stands in stark contrast to the other issues raised by this appeal in that it presents a purely factual, as opposed to legal, question.  Unlike, for example, the obstruction of justice enhancement we vacated above, we cannot simply read the record and determine whether things proceeded as they should have under our precedents.  If this were the task, we could determine whether there has been a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the rules of discovery, *see* Fed. R. Crim. Pro. 16, or due process, *see United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009).  But this is not what we are asked to do.  Instead, we are asked to determine, in the first instance, whether or not the government disclosed its suspicions about Herrera-Rivera's past border crossings.

Defense counsel supposedly believed—maybe correctly, maybe not—that the government had potentially withheld evidence to which he was entitled.  However, defense counsel did not object to the district court considering the information during sentencing or ask for a continuance so that he could investigate and determine whether anything had been withheld.  Nor did defense counsel file a motion for new trial, arguing that the government had withheld material evidence in violation of *Brady* or the rules of discovery.  Instead, he

simply observed that he had not previously heard of the government's suspicions, was content to allow the district court to go forward with sentencing, and then raised this undeveloped issue for the first time on appeal.

"[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Puckett v. United States*, 556 U.S. 129, 134 (2009) (internal quotation marks omitted). This is exactly what has occurred here. Counsel opted to proceed with sentencing armed with the information he had. Even assuming he could have raised a valid objection (a totally speculative assumption at that) counsel chose not to do so. If counsel's choice can be shown to have been both deficient performance and prejudicial, an ineffective assistance of counsel claim can be asserted on collateral review. However, it is no basis to reverse in this direct appeal.

## F.  Reassignment on Remand

Herrera-Rivera requests that we assign his case to a different district court judge on remand. "Although we generally remand for resentencing to the original district judge, we remand to a different judge if there are unusual circumstances." *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002) (internal quotation marks omitted). No such circumstances are present here.

## IV.    Conclusion

**AFFIRMED** in part; **VACATED** in part; and **REMANDED** for further proceedings consistent with this opinion.

GRABER, Circuit Judge, concurring in part and dissenting in part:

With respect to the claim that the district court erred by enhancing Defendant's sentence for obstruction of justice, I would affirm because Defendant has not satisfied the requirements of plain error review. In all other respects, I concur.

Defendant did not raise to the district court, and therefore did not preserve, his claim regarding the sentencing enhancement for obstruction of justice. "We review unpreserved claims of procedural error at sentencing for plain error." *United States v. Quintero-Junco*, 754 F.3d 746, 749 (9th Cir. 2014). Plain error review requires the defendant to show: (1) that there was an error; (2) that the error was plain; (3) that the error affected the defendant's substantial rights; and (4) that the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Macias*, 789 F.3d 1011, 1022 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016) (internal quotation marks omitted). Moreover, the defendant, not the government, "bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993). Defendant has failed to meet his burden to demonstrate prejudice.

To support the obstruction-of-justice enhancement, the district court was required to make express findings that "(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014) (internal quotation marks omitted). The district court erred by not making all three findings expressly, and the error was plain. But the

analysis cannot stop there; those are only the first two of the four elements of reversible plain error.

In my view, the district court did find—albeit in colloquial terms—that Defendant had testified falsely *and* that he did so with willful intent. When applying the sentencing enhancement for obstruction of justice, the court stated that, although "the defendant has the right to testify, . . . the defendant does not have a right to either attempt to mislead the court or to commit perjury or to obstruct the proceedings." The court's clear meaning was that Defendant *did* attempt to mislead the court, commit perjury, and obstruct the proceedings. And the court further commented that Defendant's testimony "was—to put it kindly, tenuous at best"; that's a polite way to say that he lied.

As to the third requirement, materiality, the court did not make a finding. But on this record there can be no doubt that Defendant's willfully false testimony related to a material issue. Defendant repeatedly denied that the drug-filled backpack was in his possession and denied that he had brought the backpack onto the bus. Despite Defendant's testimony, the jury found that the backpack was his. The false testimony went to the heart of the case.

The majority makes two mistakes, in my view. The first is to rely on precedent pertaining to an incorrect Guidelines calculation, *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016). Maj. op. at 17–18. This case is not about an incorrect calculation; it is about the applicability of an enhancement that (like the underlying range) was *correctly* calculated.

The majority's second mistake is its failure to analyze fully the third and fourth elements of plain error review. I agree with the majority that the length of the sentence imposed is not the proper measure and that the government's argument in that regard is unpersuasive. Maj. op. at 17–18. But we have an independent obligation to review the *entire* record to determine whether Defendant has met his burden to show prejudice. The majority's failure to do so puts us at odds with at least one sister circuit. *See United States v. Chibuko*, 744 F.3d 259, 267 (2d Cir. 2014) (per curiam) (reviewing for plain error a district court's erroneous failure to make the requisite findings to support an obstruction-of-justice sentencing enhancement and affirming on the ground that "the record as a whole" demonstrated that the lack of more detailed findings caused no prejudice).[1] There is no good reason to create a circuit split; our sister circuit's holistic approach is consistent with our own precedent that we review for plain error an unpreserved claim of a procedural flaw at sentencing and that actual prejudice is required for a defendant to obtain a remand.

Although the majority purports to apply the plain-error framework, the practical effect of its holding is to require a remand in *every* case in which a district court applies the obstruction of justice enhancement but makes incomplete findings. The majority reasons generically that a defendant's "substantial rights" to take the stand and testify "may be

---

[1] *See also United States v. Martinez*, 547 F. App'x 559, 563 (5th Cir. 2013) (per curiam) (unpublished) (applying the same analysis and affirming on the ground that "the record demonstrate[d] that [the defendant's] testimony was false, material, and willful"). But, pursuant to Fifth Circuit Rule 47.5, unpublished opinions issued after January 1, 1996, are not precedential except in limited circumstances that do not apply here.

chilled" when the district court fails to make express factual findings of perjury and that this chilling effect calls into question the fairness and integrity of the proceedings. Maj. op. at 15. That reasoning would apply automatically in every similar case and it abdicates our responsibility to examine actual prejudice, that is, to determine whether a *particular* failure to make a *particular* finding made any difference to the application of the enhancement to a *particular* defendant. The majority nowhere undertakes that required review.

Nor does *Castro-Ponce*, 770 F.3d at 821–22, support the majority's reasoning or result. We did not review for plain error in that case, so it does not control. Instead—presumably because Castro-Ponce had objected below to the imposition of the obstruction enhancement—we reviewed for clear error the findings that the district court made and reviewed de novo that court's characterization of the defendant's conduct as constituting obstruction of justice. *Id.*[2] Unlike Defendant here, Castro-Ponce *did not have to demonstrate prejudice*. The majority's wholesale importation of the *Castro-Ponce* discussion, without considering the plain error context in which the question arises here and without coming to grips with the requirement that Defendant show actual prejudice, eviscerates the plain error standard. In essentially every plain-error case, we depart from the standard of review otherwise employed when the defendant preserved the issue. By ignoring that distinction, the majority's reasoning conflicts not only with the analysis applied by our sister circuit in identical circumstances, but also with our own plain-error precedents.

---

[2] In fact, *none* of the cases cited by the majority at pages 16–17 reviewed for plain error; *all* reviewed for preserved error.

Because the district court found that Defendant's testimony was willfully false, and because the record demonstrates that Defendant's testimony was false, related to a material matter, and willful, he cannot satisfy his burden to show that the district court's error—making incomplete findings—was prejudicial. Accordingly, the third and fourth elements of reversible plain error are lacking. The error did not affect Defendant's substantial rights, and the error did not seriously affect the fairness, integrity, or public reputation of the proceedings. I therefore dissent from the majority's contrary holding.