**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

JAN 24 2022

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10122 |
| Plaintiff-Appellee, | D.C. No. 1:18-cr-00055-HG-1 |
| v. | |
| DOUGLAS SCOTT KA FARRAR, Jr., AKA Douglas S. K. Farrar, Jr., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, Senior District Judge, Presiding

Argued and Submitted February 4, 2021
Honolulu, Hawaii

Before: CLIFTON, R. NELSON, and COLLINS, Circuit Judges.

Douglas Farrar, Jr. ("Farrar") appeals his conviction for conspiring to distribute methamphetamine and cocaine with his father, Douglas Farrar, Sr. ("Farrar Sr."), and Stephen Shigemoto, both of whom were previously convicted for their respective roles in the conspiracy. He also challenges the 240-month sentence imposed by the district court. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. Farrar argues that the jury was improperly allowed to convict him of a different, broader conspiracy than the one alleged in the indictment. We disagree.

Viewed in the light most favorable to the Government, the trial evidence showed that Farrar was involved in four trips that Shigemoto took from Hawaii to Los Angeles to purchase, package, and ship drugs back to Hawaii. During the first two trips, in October 2013 and May 2014, Farrar taught Shigemoto the process of buying and packaging the drugs. Shigemoto did not meet with Farrar during the third and fourth trips, in June and July 2014, but Farrar communicated with and gave instructions to Shigemoto during those trips via encrypted cell phones, and Shigemoto used the same processes Farrar previously taught him. After the fourth trip, Shigemoto was arrested and approximately 4,000 grams of cocaine and over 14,000 grams of methamphetamine were seized. Shigemoto ultimately pleaded guilty to multiple drug-trafficking charges and was sentenced to 135 months in prison. After a jury trial, Farrar Sr. was convicted of drug-trafficking charges and was sentenced to 324 months in prison.

Farrar was subsequently indicted as well. The single-count indictment charged him with conspiring to "distribute and possess, with intent to distribute, [1] fifty (50) grams or more, to wit: approximately 14,404 grams, of methamphetamine . . . and [2] five hundred (500) grams or more, to wit: approximately 3,998 grams, of a mixture or substance containing a detectable

2

amount of cocaine," beginning "not later than May, 2013, and continuing up to and including July 22, 2014." The indictment thus specifically alleged that the conspiracy involved the minimum amounts of methamphetamine and cocaine required to qualify for the applicable mandatory minimum sentences. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (10-year sentence for "50 grams or more of methamphetamine"); *id.* § 841(b)(1)(B)(ii) (5-year sentence for "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine"). The "to wit" clauses in the indictment mentioned the specific amounts of each drug that corresponded with Shigemoto's fourth trip.

The jury at Farrar's trial was properly instructed that it could convict him if it found that he conspired to distribute at least 50 grams of methamphetamine and at least 500 grams of a mixture or substance containing cocaine, which are the amounts required by the statute. Contrary to Farrar's assertions, the indictment's mention of the specific drug amounts from Shigemoto's fourth trip did not thereby narrow the conspiracy charge to one that related *solely* to that fourth trip. The indictment expressly charged Farrar with a conspiracy spanning May 2013 through July 22, 2014—*i.e.*, dates that encompass all four of Shigemoto's trips to Los Angeles. Accordingly, the indictment's mention of the specific amounts from the fourth trip was "mere surplusage" and did "not alter the behavior for which [Farrar] c[ould] be convicted" under the terms of the indictment. *United States v.*

3

*Garcia-Paz*, 282 F.3d 1212, 1215–16 (9th Cir. 2002).[1]

2. Farrar contends that the district court improperly limited the scope of his intended questioning of Shigemoto, Farrar Sr., and the testifying government agents. Reviewing for abuse of discretion, *see United States v. Mikhel*, 889 F.3d 1003, 1035 (9th Cir. 2018), we reject these contentions.

The district court did not abuse its discretion in precluding Farrar from cross-examining Shigemoto about the sentence Shigemoto believed he was facing when in 2014, before he had pleaded guilty, he ceased cooperating with the Government against Farrar. The district court allowed Shigemoto to be cross-examined as to his motivations at the time of trial in 2018, when he *was* cooperating with the Government, and that examination included testimony concerning the 135-month sentence that Shigemoto had received in 2015 as well as his hope that, through his cooperation against Farrar, that sentence would be reduced. The court also ruled that Farrar could ask Shigemoto whether, at the time of his initial cooperation in 2014, he knew that he faced a "substantial sentence." Given the ample scope of cross-examination, the district court did not abuse its discretion in concluding that the slight, if any, probative value there might be in asking Shigemoto about his 2014 *ex ante* sentencing expectations was outweighed

---

[1] We therefore have no occasion to reach Farrar's challenge to the sufficiency of the evidence, inasmuch as that challenge rests on the erroneous premise that the indictment charged a narrow, fourth-trip-only conspiracy.

by the potential for unfair prejudice in disclosing to the jury what the applicable mandatory minimum sentence might be for Farrar's similar drug-trafficking charge. *See United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("[I]t is inappropriate for a jury to consider or be informed of the consequences of their verdict.").

Farrar also challenged the district court's limitation of his questioning of Farrar Sr., who testified as a defense witness at Farrar's trial. During its cross-examination of Farrar Sr., the Government elicited that he had pleaded guilty to an earlier 2006 drug-trafficking case in state court but had elected to go to trial in his federal prosecution arising from this investigation. Farrar argues that, in turn, he then should have been allowed to elicit that Farrar Sr. chose to go to trial because a guilty plea would not have substantially reduced his sentence. Given the limited, if any, impeachment value in Farrar Sr.'s decisions to plead guilty or to go to trial, the district court did not abuse its discretion in concluding that any rehabilitative value in learning the motivations for Farrar Sr.'s decisions was outweighed by the danger of unfair prejudice in potentially informing the jury about the sentences Farrar Sr. had faced, including any mandatory minimum sentence.

The district court also did not abuse its discretion by precluding Farrar from asking government agents or others about why, given that Shigemoto had implicated Farrar in his proffer statement back in 2014, the Government had

5

chosen not to prosecute Farrar earlier. As the district court recognized, prosecutors have "'broad discretion' as to whom to prosecute," *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citation omitted), and no pretrial challenge to the propriety of the prosecution had been raised here. On this record, the district court acted within its discretion in concluding that inquiry into such matters was irrelevant and unduly prejudicial.

3. The district court did not abuse its discretion by admitting evidence of Farrar's prior conviction for methamphetamine possession. *See United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020) (stating that rulings on admissibility of Rule 404(b) evidence are reviewed for abuse of discretion). The Government sought to admit the evidence "for the very limited purpose of further showing the defendant's intent and knowledge about this drug distribution business," and the district court provided a contemporaneous limiting instruction to this effect. The fact that the prior conviction and the charged conspiracy offense "involve different material elements" is not dispositive, because the evidence relating to the prior conviction "tended to show that [Farrar] was familiar with distribution of illegal drugs and that his actions in this case were not an accident or a mistake." *United States v. Vo*, 413 F.3d 1010, 1018–19 (9th Cir. 2005); *see also United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir. 1982) ("We have consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under

6

Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics.").  Indeed, Farrar did not contest that he met and drove around Shigemoto during the first two trips, and the prior-conviction evidence was relevant to his knowledge and intent in doing so.  We find no abuse of discretion in the admission of this evidence.

4.  The district court did not commit prejudicial error in admitting a YouTube video that depicts Farrar's purchase of a BMW in 2012.  Even assuming *arguendo* that the 2012 purchase had limited relevance to the 2013–14 conspiracy alleged in the indictment and that the district court should have reviewed the video before admitting it, Farrar "fails to establish that [any] error more likely than not affected the verdict and thus was not harmless error."  *United States v. Schales*, 546 F.3d 965, 976 (9th Cir. 2008).  To the extent that the video was not cumulative of other evidence that is not challenged on appeal, the risk of prejudice was limited, and it is unlikely that the video affected the verdict.

5.  Although the district court's jury instruction about *Pinkerton* liability was superfluous because Farrar was not charged with any substantive offense committed by a co-conspirator, *see United States v. Collazo*, 984 F.3d 1308, 1335 (9th Cir. 2021) (en banc), the jury instructions were not "as a whole . . . misleading or inadequate to guide the jury's deliberation," *United States v. Shryock*, 342 F.3d

7

948, 986 (9th Cir. 2003), with respect to the single conspiracy charge against Farrar. The district court made clear that Farrar was "not on trial for any act or conduct or offense not alleged in the Indictment" and that, to find him guilty, the jury was required to determine that a conspiracy existed and that he had joined it. The *Pinkerton* instruction therefore did not, as Farrar contends, "absolve the jury of the need to find the conspiratorial agreement charged in the indictment." Farrar has failed to show a prejudicial abuse of discretion. *See United States v. Johnson*, 956 F.2d 197, 199 (9th Cir. 1992).

6. Although Farrar did not object below, he argues on appeal that the final jury instruction on Rule 404(b) evidence constitutes reversible plain error. We disagree.

To the extent that Farrar contends that there was no factual basis to instruct the jury that it could consider his prior conviction for purposes of "preparation" and "plan," there is no basis to conclude that the jury here used it for that purpose, thereby prejudicing Farrar's substantial rights. *See Griffin v. United States*, 502 U.S. 46, 59 (1991) (noting that, when jurors "have been left the option of relying upon a factually inadequate theory," there is good reason to think that "their own intelligence and expertise will save them from that error" because "jurors are well equipped to analyze the evidence") (emphasis omitted). To the extent that Farrar instead challenges the legality of the instruction's reference to "preparation" or

8

"plan," as opposed to the factual basis for the instruction, there is no plain error because Rule 404(b) expressly allows evidence of other crimes to be considered for such purposes. *See* FED. R. EVID. 404(b)(1)–(2) (evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, *preparation*, *plan*, knowledge, identity, absence of mistake, or lack of accident") (emphasis added).

Likewise, we find no plain error in the fact that the final Rule 404(b) instruction generally referred to "other crimes not charged here," rather than only to Farrar's prior conviction. To the extent that this phrasing arguably allowed the jury to consider uncharged acts such as Farrar's potential tax fraud in 2012, there was no plain error affecting substantial rights. If anything, a cautionary instruction limiting the jury's use of already-admitted evidence would presumably mitigate any potential for unfair prejudice to Farrar.

Farrar is correct, however, that the reporter's transcript of the district court's oral reading of the final Rule 404(b) instruction differs in a critical respect from the written version of the instruction. The written instruction properly said that evidence of other wrongs may be considered "only" for specified purposes "and for no other purpose." The transcript, however, renders this latter phrase as "or for any other purpose." Even assuming that the transcript is correct and that the court misspoke in reading the instruction in open court, reversal is not warranted. The

9

trial judge had correctly recited the limitations on the use of Rule 404(b) evidence in the previous instruction that was given contemporaneously with the admission of the evidence of Farrar's prior conviction. The written instructions also correctly recited those limits, and the court provided each juror with his or her own written copy of the instructions to take into the jury room. Moreover, both the oral and written Rule 404(b) instruction ended with the specific admonition that the jury could "not consider the evidence as evidence of guilt of the crime for which the defendant is now on trial." On this record, any error in the oral reading of the instructions did not "'affect[] the outcome of the district court proceedings'" and did not "'seriously affect[] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010) (citation omitted).

7. Viewing all of the above-raised issues collectively, we find no basis to reverse Farrar's conviction on the grounds of prejudicial cumulative error. *See United States v. Wallace*, 848 F.2d 1464, 1475–76 (9th Cir. 1988).

8. Farrar also raises two challenges to his sentencing. Neither has merit.

First, Farrar argues that the district court clearly erred by failing to make sufficient findings before imposing a two-level obstruction-of-justice sentencing enhancement under U.S.S.G. § 3C1.1 based on Farrar's trial testimony. Specifically, Farrar contends that the district court failed to make the requisite

10

"express findings on each element of perjury," *viz*., that "'(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent.'" *United States v. Herrera-Rivera*, 832 F.3d 1166, 1174–75 (9th Cir. 2016) (quoting *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014)). We disagree. Although *Herrera-Rivera* and *Castro-Ponce* require express findings as to each of these three elements, they do not impose a "magic words" requirement as to how those findings are to be recited. All that is required is that the district court make sufficient findings that "encompass[] all of the factual predicates for a finding of perjury." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). Here, the record unmistakably confirms that the district court found that all three elements were satisfied.

Farrar concedes that the district court made a sufficient finding that he testified falsely at trial. Although the district court did not recite the word "material," the court expressly stated, in explaining why it was imposing the enhancement, that Farrar's testimony, if believed, would have *precluded* a finding of guilt. That finding necessarily establishes that Farrar's false testimony was material. *See Dunnigan*, 507 U.S. at 95 (holding that a statement is material if it related to matters that "substantially affect the outcome of the case") (emphasis omitted). Moreover, the district court specifically found that, by giving his false, exculpatory testimony, Farrar had engaged in an "*attempt* to obstruct justice,"

11

which necessarily means that the court found it to be willful. *See Dunnigan*, 507 U.S. at 94 (stating that the requisite willfulness is present if the defendant intended to provide false testimony, rather than acted "as a result of confusion, mistake, or faulty memory").

Second, Farrar argues that the district court clearly erred in finding that he had a leadership role in the conspiracy, thereby warranting a two-level sentencing enhancement under U.S.S.G. § 3B1.1(c). "A court may impose this enhancement if there is 'evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime.'" *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (citation omitted). The trial record contains ample evidence to support the district court's conclusion that, by training Shigemoto during the first two trips to the mainland, Farrar exercised control over him. *See supra* at 2. There was no clear error in applying the two-level enhancement. *See United States v. Maldonado*, 215 F.3d 1046, 1050–51 (9th Cir. 2000) ("A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement.").

**AFFIRMED.**

12