**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MICHELLE R. PAUP,

     Defendant - Appellant.

No. 18-1114

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CR-00233-PAB-1)**
_____

Submitted on the briefs:*

Veronica S. Rossman, Assistant Federal Public Defender, Denver, Colorado on behalf of Appellant.

Michael C. Johnson, Assistant United States Attorney, Denver, Colorado on behalf of Appellee.
_____

Before **HARTZ**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

At a jury trial before a magistrate judge, Defendant Michelle R. Paup was convicted of theft of government property of a value less than $1,000, *see* 18 U.S.C. § 641, and removal of theft-detection devices, *see id.* § 13 (incorporating state law). The charges arose from a shoplifting incident at the Army and Air Force Exchange Service store on Buckley Air Force Base in Aurora, Colorado (the Exchange). The magistrate judge sentenced Defendant to concurrent sentences on each count of 30-days' imprisonment and one year of supervised release. The judge also imposed a $1,000 fine and ordered restitution equaling the full retail value of the stolen merchandise ($734.41). Defendant appealed to the United States District Court for the District of Colorado, challenging, as relevant to this appeal, the amount of the restitution award, the exclusion of her expert witness, and the application of a two-level enhancement of her offense level because of perjury. The district court upheld her conviction and sentence of imprisonment but vacated the restitution award and remanded to the magistrate judge for further proceedings. Defendant then appealed to this court.

We first hold that we have jurisdiction because the district-court remand order did not disturb Defendant's conviction or sentence of imprisonment and all that remains to be determined on remand is the amount of restitution. We then affirm on the merits. The magistrate judge did not err in excluding Defendant's expert or in imposing the offense-level enhancement.

## I. DISCUSSION

### A. Jurisdiction

Under 28 U.S.C. § 1291 the circuit courts have jurisdiction of appeals from "final decisions" of the federal district courts. "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937) (sentence was final judgment even though execution of sentence was suspended and defendant was placed on probation). "A sentence . . . imposed only after the whole process of the criminal trial and determination of guilt has been completed, sufficiently satisfies conventional requirements of finality for purposes of appeal. The litigation is complete as to the fundamental matter at issue—the right to convict the accused of the crime charged in the indictment." *Corey v. United States*, 375 U.S. 169, 174 (1963) (internal quotation marks omitted) (if defendant was committed to custody of attorney general (deemed to be for maximum possible prison sentence) under now-repealed 18 U.S.C. § 4208(b) to permit Bureau of Prisons to prepare report within three or six months for court to use in setting ultimate sentence, defendant could appeal after imposition of § 4208(b) sentence or after ultimate sentence).

The district-court order challenged by Defendant upheld her conviction[1] and sentence of imprisonment but also remanded "for further proceedings." R., Vol. 1 at 480. Despite this seemingly broad language, the order makes clear that it only "vacate[d] the

---

[1] The district-court order states that "defendant's conviction is affirmed in part and reversed in part." R., Vol. 1 at 479. But this was a mislocution, since nothing in that order disturbs Defendant's conviction.

magistrate judge's restitution award." *Id.* at 479; *cf. United State v. Shipp*, 644 F.3d 1126, 1129 (10th Cir. 2011) (reading mandate "in light of [the] opinion that preceded the mandate"). The question before us is thus whether the district court's order is "final," and therefore appealable, even though the amount of restitution owed by Defendant is undetermined.

The Supreme Court has said that "strong arguments favor the appealability of [an] initial judgment [imposing a sentence of imprisonment and supervised release] irrespective of the delay in determining the restitution amount." *Dolan v. United States*, 560 U.S. 605, 617 (2010). The Court noted 18 U.S.C. § 3582(b), which states that a judgment of conviction that includes "a sentence to imprisonment" is a "final judgment." *See id.* It also cited several circuit-court cases in which a defendant appealed a judgment imposing a sentence of imprisonment and then separately appealed a later order setting the amount of restitution, thus indicating that both orders were appealable judgments. *See id.* at 618. Restricting appellate review until after restitution is set, the Court explained, would frustrate a defendant's need to promptly challenge her conviction or sentence of imprisonment. *See id.* But the Court cautioned that it was "simply not[ing] the strength of the arguments" in favor of appealing a judgment deferring restitution "without deciding whether or when a party can, or must, appeal. We leave all such matters for another day." *Id.*

The Court took up this issue again in *Manrique v. United States*, 137 S. Ct. 1266, 1270 (2017), where it addressed a notice of appeal filed after an initial judgment not setting the amount of restitution but before an amended judgment setting the amount.

4

The Court held that the notice was not sufficient to invoke appellate review of the restitution amount. Although the defendant argued that only one appealable judgment is at issue in a case where restitution is deferred but later imposed, the Court disagreed, stating that "[o]ur analysis in *Dolan* makes clear that deferred restitution cases involve two appealable judgments, not one." *Id.* at 1273.

In light of this precedent, other circuits have declared that a sentence of imprisonment is a final judgment even though restitution has not been resolved. *See United States v. Tulsiram*, 815 F.3d 114, 119 (2d Cir. 2016) ("[W]e have no difficulty in reaching our holding today: a judgment of conviction that imposes a sentence including incarceration and restitution is 'final' within the meaning of 28 U.S.C. § 1291, even if the sentence defers determination of the amount of restitution."); *United States v. Gilbert*, 807 F.3d 1197, 1200 (9th Cir. 2015) ("[A] sentence of incarceration coupled with an unspecified amount of restitution is a sufficiently final judgment to support a direct appeal"); *United States v. Muzio*, 757 F.3d 1243, 1250 (11th Cir. 2014) ("[F]ollowing the Supreme Court's dicta in *Dolan* and applying its holding in *Corey*, we conclude that a judgment imposing a prison sentence and restitution but leaving the specific amount of restitution unsettled is immediately appealable."); *United States v. Donohue*, 726 F. App'x 333, 339 (6th Cir. 2018) ("There is no dispute that [under *Manrique*] the court has jurisdiction to decide defendants' challenges to their original judgments, which represent final appealable judgments under 18 U.S.C. § 3742(a) (final sentence) and 28 U.S.C. § 1291 (final judgment), even though the district court had deferred determination of the restitution amount to a later date.").

5

True, the district court in this case vacated rather than deferred the restitution determination. But we believe Supreme Court precedent directs that a defendant sentenced to imprisonment need not wait until restitution is finally resolved (here, after reconsideration by the magistrate judge and appeal to the district court) before being allowed to challenge her conviction and sentence on appeal to this court. In our view, we have jurisdiction over Defendant's appeal.

### B. Standard of Review

Appeal from a judgment in a criminal case entered by a magistrate judge is to the district court. *See* 18 U.S.C. § 3402. "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). When the district court's order is appealed, our court exercises a "second tier of appellate review" in which we apply to the magistrate judge's order "the same standard" that the district court is to use in its own review. *United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010) (internal quotation marks omitted); *see United States v. Peck*, 545 F.2d 962, 964 (5th Cir. 1977) (same). In other words, we review the magistrate judge's order just as we would a judgment first entered by the district court and then appealed to us.

### C. Exclusion of Defendant's Expert

Defendant argues that the magistrate judge erred in excluding her expert witness, who was to testify to her struggle with mental illness. We review the exclusion of expert testimony for abuse of discretion. *See United States v. Adams*, 271 F.3d 1236, 1243 (10th Cir. 2001).

The procedural history supports the exclusion. On December 20, 2013, Defendant received a violation notice alleging that she had shoplifted from the Exchange. Her counsel entered his appearance in May 2014, but no information was filed against Defendant until August 14. At the proceeding on August 14, at which Defendant was to be arraigned, she asked the court to postpone her arraignment for 60 days. According to defense counsel, Defendant's therapist had indicated that she suffered from dissociative disorders but was "not competent to [give] a medical opinion on that." R., Vol. 3 at 883. The therapist advised her to seek a qualified psychologist to opine on her mental-health condition, and her counsel sought a continuance to do so. The magistrate judge granted the request and reset the arraignment for two months later.

Trial was initially set for December 15, 2014. But on December 8, Defendant moved to continue the trial because she had an examination scheduled with Dr. Dana Satir, a psychologist she had retained, and she wished to investigate whether Dr. Satir could provide expert testimony that Defendant lacked the mens rea necessary to commit the charged crimes. Counsel said that before finding Dr. Satir, he had considered another expert but "he was a male, and [Defendant] was not comfortable talking about her issues and her trauma issues and all of that to the male person." *Id.* at 884. The government opposed a continuance, arguing that Defendant had previously requested, and received, a postponement for the same reason. The magistrate judge advised defense counsel that under Federal Rule of Criminal Procedure 16 he would need to submit to the government a written summary of the expert's proposed testimony, *see* Fed. R. Crim. P. 16(b), and she asked counsel how much time that would take. Defense counsel requested 50 days.

7

The magistrate judge agreed and set January 27, 2015, as the deadline for Defendant to make her expert disclosures, February 9 as the deadline for the government's expert disclosures, and February 23 for trial. But she warned defense counsel that "another continuance on this basis is very unlikely because I think at some point we've got to decide." *Id.* at 899.

Defendant missed her deadline. After the close of business on Friday, February 6, ten days after the deadline, counsel emailed to the government and the magistrate judge Defendant's witness list, which included Dr. Lon Kopit as an expert witness. The list contained a two-sentence description of Dr. Kopit's proposed testimony:

> Dr. Kopit is an expert in Forensic psychology and psychiatry. He will testify to the mental health issues of defendant and her lack of the requisite mental state (mens rea) elements of the crimes charged against defendant.

R., Vol. 1 at 144. Defendant did not provide any further summary of the expert's opinion at that time. On the following Monday the court entered a minute order instructing Defendant to submit the witness list through the court's electronic filing system (PACER), not email. That same day, the government moved to exclude Defendant's expert, filing Defendant's emailed witness list as an attachment to its motion.

The motion was considered at a pretrial conference on Tuesday, February 10. Defense counsel gave an assortment of reasons for the tardy disclosure. But the magistrate judge found the excuses inadequate—noting that Defendant had been afforded ample time to find an expert—and granted the motion to exclude Dr. Kopit.

Defendant filed a motion to reconsider at midnight before another pretrial conference scheduled for the morning of February 13. Defense counsel again offered

excuses for his delay, the government explained that it could not possibly be prepared to respond to the new expert in time for trial, and the magistrate judge denied the motion to reconsider.

The magistrate judge's exclusion of Defendant's expert was within her sound discretion. We begin with the governing law. In *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988), we enumerated three factors to be considered in imposing a discovery sanction against the government in a criminal case:

> (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

These factors do not "dictate the bounds of the court's discretion," but "merely guide the district court in its consideration of sanctions." *Id.* For example, "the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *Id.*

In *Adams*, 271 F.3d at 1244, we adopted the same approach to determine the propriety of excluding defense witnesses. Adams had disclosed his psychological expert only three days before trial and over a month after the disclosure deadline. *See id.* at 1243. We held that the district court properly excluded the expert "on the grounds of untimeliness alone," because "three months had passed since the defendant's indictment" and "concerns about the defendant's mental state" had previously been raised. *Id.* at 1244. Although the district court did not "explicitly weigh" the second or third *Wicker* factors, we noted that the record on appeal indicated that "the final two factors weigh[ed]

9

strongly in favor of exclusion of the evidence," because the delayed disclosure "left the government no opportunity to conduct its own psychological examination of the defendant, or otherwise mount a rebuttal" and a "continuance adequate to accommodate the described needs of the government would significantly delay the trial." *Id.*

On appeal Defendant challenges the exclusion of Dr. Kopit on several grounds. First, she argues that the magistrate judge failed to apply *Wicker* in ruling on the matter. This argument is belied by the record. The magistrate judge may not have cited *Wicker* itself. But she cited *Adams*, which follows *Wicker*, and she addressed each of the factors. She discussed Defendant's excuses for not disclosing her expert on time, the impact her tardiness would have on the government's being ready for the scheduled trial, and the problems with setting a new date.

Next, Defendant, "assuming the magistrate [judge] implicitly considered the *Wicker* factors," Aplt. Br. at 22, challenges how the magistrate judge evaluated and weighed those factors. Regarding the reasons for delay—the first *Wicker* factor— Defendant excuses her counsel's failure to comply with the magistrate judge's deadline on the ground that counsel was unfamiliar with federal-court rules and procedures, including the PACER system, since this was his first federal criminal trial. The magistrate judge was properly unimpressed. Regarding PACER, she pointed out that it is a very user-friendly system, that this was the first time during her seven years on the bench that any lawyer had complained of problems, that defense counsel had first brought up the PACER matter two months earlier and had plenty of time to learn the system, and

in any event it was not until 10 days after the deadline that defense counsel tried to use PACER to give notice of his expert.

Unfamiliarity with federal court procedures was also no excuse. The magistrate judge's directions to counsel could not have been clearer—disclose the expert and a summary of the proposed testimony by a specific date. How much federal-court experience does one need to understand that plain directive? Indeed, defense counsel never suggested that he did not understand what he had to do and when he had to do it. Other than complaining about PACER, he invoked his lack of federal-court experience only when he tried to explain why he had not alerted the government or the court of the need for additional time to make the disclosure. The magistrate judge found that explanation unconvincing, pointing out that counsel's state-court experience certainly encompassed requests for additional time. Defense counsel then gave additional excuses, saying that giving notice had not occurred to him and that he was having personal problems at the time. But those excuses ring hollow since counsel had successfully requested a continuance on the same issue twice before and thus knew that was an available option. As the magistrate judge said at the February 13 hearing, "The trial dates have been extended several times now all on the basis of defendant's request to . . . get a mental health report . . . ." R., Vol. 3 at 700.

Defendant cites one case in which we held that an attorney's inexperience was a consideration in overturning a discovery sanction. In *United States v. Dennison*, 891 F.2d 255, 258 (10th Cir. 1989), the prosecutor had not complied with several discovery orders requiring disclosure of "any evidence in his custody or under his control which

11

might tend to impeach a government witness or might otherwise tend to exculpate the defendants." But the opinion does not describe the undisclosed evidence or why inexperience could excuse the prosecutor's lapse. Perhaps more importantly, the sanction in that case—midtrial dismissal of the indictment—was the most extreme possible. We decline to read our prior opinion as forbidding a witness-exclusion sanction for failure by an inexperienced attorney to comply with a mandate as precise as in the case before us.

Defendant further asserts that because her attorney did not act in bad faith, exclusion of her expert was improper. But *Adams*, on which the magistrate judge relied, excluded a defendant's expert even absent a consideration of bad faith. *See* 271 F.3d at 1244. And at any rate there was reason to doubt defense counsel's bona fides. The magistrate judge observed that defense counsel "filed [the expert disclosure] as late as you possibly could I think to disadvantage the Government," R., Vol. 3 at 697, and had "wait[ed] until the eve of trial to tell the Government what [the expert was] going to say so that they had no chance whatsoever to rebut it," *id.* at 915. Although defense counsel denied delaying the filings for strategic gain, the magistrate judge told him that "your actions are speaking louder than your words." *Id.* at 697.[2]

Defendant's briefs also allude to defense counsel's statements to the magistrate judge about the difficulties in obtaining an expert witness. But by the time of the

---

[2] The magistrate judge then said, "And I'm not holding that against you. I'm just saying that's the fact of it." R., Vol. 3 at 697. Defendant reads this as evidence that the magistrate judge did not make a finding of bad faith. But in context we understand this last remark to mean only that the late-night filing of Defendant's motion to reconsider did not factor into the magistrate judge's decision to deny the motion. *See id.* at 697.

disclosure deadline defense counsel had been in the case for nine months (having entered an appearance in May 2014), had said in open court in August 2014 that he was trying to get an expert to testify to Defendant's mental-health issues, and had been granted lengthy extensions to obtain an expert in August and December 2014 for the amount of time he had requested. Defendant suggests that there was a special problem because she did not wish to disclose her condition to a male psychologist. But counsel would have known of this problem when first seeking an expert, and Defendant ultimately ended up with a male expert anyway. In any event, defense counsel had known of the need to obtain an expert for at least six months (two or three times as long as in *Adams*), which was ample time.

Regarding prejudice—the second *Wicker* factor—it cannot be denied that the prosecution could not possibly have been ready to respond to the expert testimony in the brief time available before trial. As it explained at the hearing to exclude the expert, it would need time to obtain Defendant's mental-health records, consult an expert of its own, and possibly obtain an expert examination of Defendant. The magistrate judge reasonably credited the government's account of the prejudice it would suffer. *See, e.g.*, *id.* at 699 ("The Government is extremely disadvantaged and severely disadvantaged . . . ."); *id.* at 700 (the delayed disclosure was "way too prejudicial to the plaintiff").

The third factor is the feasibility of a continuance. A continuance is almost always "doable." But the magistrate judge explained that a long delay would have been necessary. *See id.* at 698 ("I don't have another date to give you for another month or so. And the Government, from what they've told me, boy, that's going to take a lot longer

13

than a month to get all these medical records and have a 702 hearing and interview these experts, maybe take a deposition."). As we said in *Wicker*, suppression of evidence may be necessary "to maintain the integrity and schedule of the court even though the [opposing party] may not be prejudiced." 848 F.2d at 1061. We held that a continuance was not a feasible remedy "in view of the district court's pressing schedule, the status of the present case, and the failure of a prior continuance and deadlines to ensure timely discovery." *Id.* at 1062. This was also the case in *Adams*, where "[a] continuance adequate to accommodate the described needs of the government would significantly delay the trial." 271 F.3d at 1244. Here the reason to deny an additional continuance was particularly sound. Defendant had already been granted two continuances—for the amount of time she requested—to obtain an expert witness. Courts have no obligation to grant continuances ad infinitum to avoid prejudice to parties who have demonstrated repeated failures of diligence.

Finally, Defendant contends that the magistrate judge improperly excluded her expert on the ground that his testimony would be inadmissible. We reject that contention. True, the magistrate judge expressed serious doubts as to the admissibility of much of Defendant's proposed expert testimony. But she made no rulings on the matter. On the contrary, she said there would need to be hearings if admissibility was challenged. And it was the additional delay that would result from such proceedings that appeared to be her chief concern.

The magistrate judge's decision was informed and supported by the considerations outlined in *Wicker*. She did not abuse her discretion.

**D. Application of Two-Level Enhancement to Offense Level**

The Sentencing Guidelines increase a defendant's offense level by two for obstruction of justice if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." USSG § 3C1.1. One type of obstruction is perjury. "The elements of perjury are that a witness: (1) when testifying under oath, gives false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995). To impose an enhancement for perjury, the sentencing court must identify "the perjurious statement . . . at least in substance." *Id.* "Once the perjurious testimony is identified, . . . findings that such testimony was false, material, and given with intent to commit perjury" can be "fairly conclusory." *Id.* at 1574.

Defendant raises two challenges to the magistrate judge's imposition of a two-level enhancement to her offense level for perjury. First she contends that the magistrate judge failed to make the findings underlying the enhancement with sufficient specificity. But defense counsel did not raise this argument before the magistrate judge at the sentencing hearing despite speaking at length after imposition of the enhancement and turning down an offer to raise "anything else" after imposition of the sentence. R., Vol. 3 at 658. We therefore review the argument for plain error. *See United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011) (reviewing for plain error the defendant's argument

15

as to adequacy of sentencing court's perjury findings when the defendant did not object on that ground); *see also United States v. Cook*, 550 F.3d 1292, 1297–98 (10th Cir. 2008). To prevail under the plain-error standard, Defendant must show: "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Cook*, 550 F.3d at 1298 (internal quotation marks omitted). "For an error to affect substantial rights, Defendant bears the burden of showing a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

Defendant fails on the third prong—prejudice—because of the clear evidence of perjury. *See Flonnory*, 630 F.3d at 1288 (defendant did not show the requisite prejudice because "it would be surprising if his sentence would be any different if we reversed and remanded for sentencing"). A relatively brief summary of the evidence will suffice.

The evidence included the recording of a surveillance video at the Exchange, observations of Defendant's conduct by Exchange employees, and the results of searches of the store and Defendant immediately after she was apprehended when she left the store. She had initially joined a checkout line but then went to an unattended register and ultimately rolled her cart through central checkout and left without paying. Security personnel found her with 13 items that had not been paid for; her purse also contained some wire cutters. We will discuss the evidence regarding four items: a pair of boots, two Coach bags, and a North Face jacket.

16

The video recording showed that Defendant removed a pair of boots from one box, placed them into another box (for cheaper shoes), and entered a dressing room. Defendant left the first box on the sales floor—where it was found after she was stopped by security personnel, and left the second box in a dressing room searched by a security officer (who had been following her on video) shortly after Defendant left the dressing room. When she was apprehended, the boots were in a bag from another store (Marshalls).

The video also showed Defendant taking two Coach purses and concealing them with her own purse; those same purses were found in Defendant's bag after she left the Exchange. And it captured Defendant discarding some items into trash bins, which were searched immediately after Defendant was apprehended. It appeared that she picked up a tissue from the floor, continued walking for a while, and then reached into her back pocket before putting the tissue in a trash bin in the cosmetics section. When that bin was searched, the security officer found an EAS (Electronic Article Surveillance) tag wrapped in a tissue. Such tags are placed on high-priced merchandise; a tag sets off an alarm in detectors beyond the checkout area if the cashier has not removed it from the merchandise. The tag could not be identified as having come from a specific item; but the boots and the Coach purses in Defendant's possession when she was apprehended, which should have had such tags (in fact, an EAS tag can be seen on the boots in the surveillance video), had no tags. The wire attaching the tag to the merchandise had been cut cleanly, as if by wire cutters. Defendant also tossed something from her back pocket in a trash bin after leaving central checkout. The video had shown her rolling up a sales

17

tag and putting it in her back pocket when she left a dressing room. A search of that trash bin revealed tags from the North Face jacket that she took from the store.

Defendant tried to explain her behavior. She said that she intended to pay for the merchandise but thought she could do so in the mall-like area outside the Exchange. She said that she planned to give the boots to her 20-year-old daughter and moved them to a different box so that her daughter would be less likely to guess what they were. She claimed that she brought the Marshalls bag in which she hid the boots because she "believe[s] in recycling" and because "it's also a way to help [her] with [her obsessive compulsive disorder (OCD)] to keep things separated." R., Vol. 3 at 433.

Defendant denied putting the Coach bags she took from the Exchange in her own purse (where they were ultimately found) and claimed that she instead put them "underneath [her] purse so that [she could] keep track of [them]." *Id.* at 430. Later she claimed that she bought the Coach bags at Macy's before arriving at the Exchange. She claimed that the tag from the North Face jacket somehow fell off when she tried to zip the jacket, so she put it in her pocket. And when shown the video footage of her picking up and discarding the tissue, she attributed the behavior to her desire for cleanliness, another product of her OCD. She denied, however, removing the EAS tag found in the tissue and said that she used the wirecutters in her purse not to remove such tags but to cut herself, a manifestation of her psychological problems.

In light of this evidence, it is hardly surprising that the magistrate judge found at sentencing that "[Defendant] clearly in my estimation committed perjury." *Id.* at 633.

Although her findings were perhaps not as specific as required, there can be no doubt of her view of the evidence. The magistrate judge elaborated as follows:

> What happened in this case is [Defendant] got on the witness stand and lied repeatedly and said things that were clearly not true, things that she – she had no business or reason saying, and that puts this in a whole different light. That is obstruction of justice. That is not putting the government to its proof. That is lying in order to get out of being found guilty for what you were doing on the videotape I might add that the jury was able to see. And for that reason the obstruction of justice adjustment applies . . . . When you lie about what you did you may – she made extremely specious explanations of putting Coach purses in another bag and hiding them when – when her behavior was on tape. . . . I think that she's a professional shoplifter, frankly. She came armed with her cutting tools and her extra bags from other stores and it seems to me she was a very well-prepared shoplifter . . . .

*Id.* at 633–34. Later she added: "I believe that you planned this event, that you came prepared to steal. . . . [Y]ou brought special bags in with you. You brought wire cutters in with you. You did things that to me are very indicative of professional shoplifters." *Id.* at 647. Given the magistrate judge's comments, we think it highly unlikely that the magistrate judge would change her mind about the enhancement if we remanded for greater specificity about what statements by Defendant were perjurious. *See Flonnery*, 630 F.3d at 1288. We therefore conclude that Defendant has not established the third prong of plain error and she is not entitled to relief.

Defendant's second challenge to the obstruction enhancement is that there was not sufficient evidence of perjury. "[W]e review a [sentencing] court's legal interpretation of the Guidelines de novo and its factual findings for clear error." *See United States v. Smith*, 534 F.3d 1211, 1226 (10th Cir. 2008). But our prior discussion of the compelling evidence of perjury also rebuts this challenge. We add only that we are not persuaded by

19

Defendant's argument that the magistrate judge did not account for Defendant's mental illness in finding that she committed perjury. She insists that her mental illness explains her "perception" of the shoplifting incident, which was plainly at odds with the surveillance video. Aplt. Br. at 32. Perhaps some would believe her version. But her testimony was far from compelling, and we almost invariably defer to the factfinder on matters of credibility. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1265 (10th Cir. 2006). The magistrate judge, who observed Defendant's testimony, was not persuaded. Defendant is not entitled to relief regarding the offense-level enhancement.

## II.    CONCLUSION

We **AFFIRM** the district court's order affirming Defendant's conviction and sentence of imprisonment.

20