NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

JUN 8 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30188 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 1:20-cr-02022-SMJ-1 1:20-cr-02022-SMJ |
| BRUCE WARREN SAMPSON, Jr., | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Salvador Mendoza, Jr., District Judge, Presiding

Argued and Submitted February 16, 2023
Seattle, Washington

Before: PAEZ and VANDYKE, Circuit Judges, and BENITEZ,** District Judge.
Concurrences by Judge Paez and Judge Vandyke.

Appellant Bruce Sampson, Jr. was convicted by jury of assault with a

dangerous weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3) and

1153, and assault resulting in serious bodily injury in Indian Country, in violation

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

of 18 U.S.C. §§ 113(a)(6) and 1153.  Sampson argues the district court erred when it: (1) denied his motion for a deposition of a material witness before trial; (2) denied his motion for acquittal of 18 U.S.C. § 113(a)(3), assault with a dangerous weapon; and (3) made various errors during sentencing.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm in part and reverse in part.  We assume familiarity with the underlying facts and arguments in this appeal.

**1.** Sampson makes two arguments relating to the district court's denial of his motion for pre-trial deposition of victim E.U.  First, Sampson contends that his counsel was prevented from preparing a full defense.  This argument is not supported by precedent.  Neither the Supreme Court nor the Ninth Circuit has recognized a Sixth Amendment right for defendants to depose or otherwise interview a witness prior to trial.  *United States v. Ash*, 413 U.S. 300, 316-17 (1973) (holding that the Sixth Amendment does not create a right for defense counsel to be present during prosecution's pre-trial witness interviews); *United States v. Black*, 767 F.2d 1334, 1338 (9th Cir. 1985) (explaining that there is no violation of the Sixth Amendment when witnesses voluntarily decline pre-trial interviews with defense counsel).

Second, Sampson argues E.U.'s "pervasive" memory loss at trial resulted in Sampson being functionally unable to confront the witness against him.  The

2

Supreme Court has addressed whether a Confrontation Clause violation can be based on a witness's loss of memory. *United States v. Owens*, 484 U.S. 554 (1988), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 51 (2004). In *Owens*, despite gaps in the victim's memory regarding key events, the victim witness did testify at trial and was cross-examined by defense counsel. *Id.* at 556. The *Owens* Court determined the victim-witness's lack of memory did not cause a Confrontation Clause violation, reasoning that, "[t]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 559 (citation omitted). The same is true here. Because E.U. testified at trial and submitted to cross-examination by defense counsel, there was no Confrontation Clause violation.

**2.** Next, Sampson challenges the district court's denial of his motion for acquittal of 18 U.S.C. § 113(a)(3), assault with a dangerous weapon. Sampson does not challenge whether a shoe can be considered a dangerous weapon, but whether there was sufficient evidence to show E.U. was actually kicked during the assault. The standard for determining whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,*

443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting *Jackson*). Additionally, "[t]he reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

Sampson relies heavily on the testimony of defense witnesses and the victim's inconsistent statements for this argument. However, his emphasis on conflicting witness accounts is misplaced. Given the conflicting testimony of *all* the witnesses to the assault—Sampson, his girlfriend Charlene Richards, and victim E.U.—the verdict signals that the jury found Sampson's and Richards's version of events not credible. We will not disturb this credibility determination on appeal.

Sampson also points to multiple interpretations of the physical evidence to argue there was reasonable doubt that E.U. was kicked. Although there was no direct evidence, there was sufficient circumstantial evidence to show that E.U. was kicked during the assault. We have held that even circumstantial evidence and inferences drawn therefrom can be enough to uphold a conviction. *Maass*, 45 F.3d at 1358 (citation omitted). After reviewing the record in the light most favorable to the prosecution, we conclude there is sufficient evidence to support Sampson's conviction for assault with a deadly weapon.

**3.** Finally, Sampson alleges several errors occurred during his sentencing.

A district court's interpretation of the Sentencing Guidelines is reviewed de novo, its application of the Guidelines to facts is reviewed for abuse of discretion, and its factual findings are reviewed for clear error. *United States v. Loew*, 593 F.3d 1136, 1139 (9th Cir. 2010) (citation omitted).

First, Sampson challenges the district court's application of the obstruction of justice adjustment to his sentence. The district court stated the basis for the obstruction of justice enhancement was Sampson's testimony at trial. The Supreme Court has held that when a district court bases this sentence enhancement on the defendant's trial testimony, the court must "make independent findings necessary to establish a willful impediment to or obstruction of justice . . . under the perjury definition we have set out." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

In a line of cases interpreting *Dunnigan*, we have held that district courts must make the explicit factual findings necessary for perjury; a reviewing court cannot justify the enhancement on appeal, and the district court's failure to make these findings during sentencing is reversible error. *United States v. Herrera-Rivera*, 832 F.3d 1166, 1174-75 (9th Cir. 2016); *United States v. Castro-Ponce*, 770 F.3d 819, 822-23 (9th Cir. 2014); *United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103-1104 (9th Cir. 2007). In this case, the district court did not make the requisite express factual findings required by these cases. Bound by the rule set

5

out in *Castro-Ponce*, we reverse and remand for resentencing on this ground.

Second, Sampson challenges the district court's application of the deadly weapon enhancement to his sentence. However, because the jury's verdict regarding assault with a deadly weapon was supported by sufficient evidence, the application of this upward adjustment was not erroneous.

Third, Sampson challenges the district court's denial of a downward adjustment for acceptance of responsibility. When deciding whether to apply this adjustment, district courts "should consider the defendant's contrition," *United States v. Martinez-Martinez*, 369 F.3d 1076, 1089 (9th Cir. 2004), and whether the defendant "manifests a genuine acceptance of responsibility for his actions," *United States v. McKinney*, 15 F.3d 849, 852 (9th Cir. 1994). As long as the sentencing court did not rely on impermissible factors when making this determination, "no specific explanation of reasons is required for denying a defendant a downward adjustment for acceptance of responsibility." *United States v. Mohrbacher*, 182 F.3d 1041, 1052 (9th Cir. 1999) (citation omitted). Here, the district court made explicit findings on the record that Sampson lacked remorse for his actions. This reasoning is sufficient.

Finally, Sampson challenges the overall reasonableness of his sentence. Sampson points to the disparity in sentence length between state and federal courts, and further argues this disparity unduly impacts Native Americans who are

6

sentenced under federal sentencing guidelines. Sampson appears to argue that the Major Crimes Act, 18 U.S.C. § 1153 *et seq*, is unconstitutional under the Equal Protection Clause because it makes "an explicit classification based on race or ethnicity."

Sampson's argument comparing state and federal sentencing disparities is foreclosed by *United States v. Ringgold,* where we held that 18 U.S.C. § 3553 (a)(6) does not require consideration of disparities between similarly situated state and federal defendants. 571 F.3d 948, 951 (9th Cir. 2009). We reasoned that "allowing the departure solely based on federal-state sentence disparities 'would undermine the goal of uniformity that Congress sought to ensure in enacting the [Sentencing] Guidelines.'" *Id*. (citation omitted).

Regarding the disparate effect the federal sentencing guidelines have on Native Americans, parts of this argument have been addressed by both the Supreme Court and this court. In *United States v. Antelope*, the Supreme Court reasoned that classification of Native Americans under the Major Crimes Act was a political one arising from "the unique status of Indians as a 'separate people' with their own political institutions." 430 U.S. 641, 646 (1977). The Supreme Court concluded that "Indian" in this context was therefore not an impermissible racial classification. *Id*. at 646. Adding to this, we have observed that, "Congress is not required to eliminate all differences in treatment between Indians and non-

Indians so long as all persons subject to federal jurisdiction are treated the same." *United States v. Yazzie*, 693 F.2d 102, 104 (9th Cir. 1982) (citing *Antelope*, 430 U.S. at 646). Given the above, the district court did not abuse its discretion or impose an unreasonable sentence based on its refusal to consider the potentially lesser sentence Sampson could have received in state court.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED for resentencing consistent with this disposition.**

*United States v. Sampson,* No. 21-30188

Paez, J., concurring:

I concur in the majority decision. I write separately to express my agreement with the decision in *United States v. Castro-Ponce,* which holds that a sentencing court must make express findings on the elements of perjury before imposing a sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1. 770 F.3d 819, 823 (9th Cir. 2014). Our holding in *Castro-Ponce* is consistent with Supreme Court precedent and the approaches of our sister circuits. Furthermore, the *Castro-Ponce* rule serves an important role in safeguarding a defendant's constitutional right to testify on his own behalf, without fear he will be punished by a longer sentence if found guilty. For these reasons, I disagree with the concurrence's attempt to chip away at *Castro-Ponce.*

The concurrence's argument is premised on a misreading of *United States v. Dunnigan,* 507 U.S. 87 (1993). *Dunnigan* holds that a sentencing court cannot impose a § 3C1.1 enhancement without "mak[ing] independent findings necessary to establish a willful impediment to or obstruction of justice . . . under the perjury definition" the Court laid out. *Id.* at 95. The Court's definition of perjury contains three elements: 1) that a defendant gave false testimony 2) on a material matter 3) with willful intent. *Id.* at 94. The Court explained that, when imposing a § 3C1.1 enhancement for perjury, "it is preferable for a district court to address each

1

element of the alleged perjury in a separate and clear finding," but it is also sufficient if a court "makes a finding . . . that encompasses all of the factual predicates for a finding of perjury." *Id.* at 95. The concurrence seizes on this latter clause, asserting that it allows district courts to impose the enhancement without making *any* findings on the elements of perjury.

But there can be no doubt that *Dunnigan* requires specific findings on the elements of perjury. The opinion repeatedly says so. It first states that "a trial court must make findings to support all the elements of a perjury violation in the specific case." *Id.* at 96-97. And then again, it stresses that "the *elements* of perjury must be found by the district court with the *specificity* we have stated." *Id.* at 98 (emphasis added). The concurrence claims that the Court "meant what it said" by "not requiring explicit findings on each element of alleged perjury," but that statement is found nowhere in the opinion. *Dunnigan* is clear: a trial court can choose to make "separate and clear" findings on the perjury elements, or a finding "encompass[ing]" all of the elements at once, but either way, the court must address every element of the offense.

The factual record in *Dunnigan* further underscores the specificity of findings that is required. In *Dunnigan,* the district court made a global statement that addressed all three elements of perjury at once, finding that "*the defendant was untruthful at trial with respect to material matters . . . that were designed to*

2

*substantially affect the outcome of the case.*" *Id.* at 95 (emphasis in original). The Supreme Court concluded that this statement was sufficiently specific because "each of the factual predicates of perjury was covered by the [text that the Court] italicized," and the record contained evidence supporting those findings. *United States v. Jimenez,* 300 F.3d 1166, 1170 (9th Cir. 2002) (citing *Dunnigan,* 507 U.S. at 95). The notion that *Dunnigan* allows a trial court to freely impose the perjury enhancement without making any specific findings is not consistent with what happened in that case.

We have consistently interpreted and applied *Dunnigan* since its inception. In a series of early cases, we upheld the obstruction of justice enhancement because the district court made findings on all three elements of perjury. *See United States v. Shannon*, 137 F.3d 1112, 1119 (9th Cir. 1998) (affirming district court's statement that it "found [defendant's] testimony to be false, material, and willful"); *United States v. Oplinger*, 150 F.3d 1061, 1070 (9th Cir. 1998) (affirming district court's finding that the "evidence shows that [the defendant] did testify as [sic] a material, relevant issue of fact falsely"); *see also United States v. Ancheta*, 38 F.3d 1114, 1118 (9th Cir. 1994). And in 2006 and 2007, we vacated a § 3C1.1 enhancement in two separate cases because the district court failed to make findings on materiality. *See Jimenez*, 300 F.3d at 1171 ("[B]ecause the court . . . did not expressly find that the false testimony was material, its finding of

3

perjury failed to encompass all factual predicates of perjury as required by *Dunnigan*."); *see also United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103-04 (9th Cir. 2007) (same).

The concurrence embarks on a misleading detour by citing *United States v. Arias-Villanueva*, one of our earlier cases where we upheld a perjury enhancement despite the district court's failure to make a finding on materiality. 998 F.2d 1491, 1512-13 (9th Cir. 1993). But *Arias-Villanueva* was overruled for reasons that had nothing to do with *Dunnigan.* As we explained in *Jimenez-Ortega*, *Arias-Villanueva* was abrogated by the Supreme Court's decision in *United States v. Gaudin*, which clarified that materiality is a factual issue that must be decided by the trier of fact. *Jimenez-Ortega*, 472 F.3d at 1103-04 (citing *United States v. Gaudin,* 515 U.S. 506 (1995)). "Thus, while it was acceptable at the time of *Arias-Villanueva* for our court to make a ruling on materiality . . . this was no longer true when *Jimenez* was decided." *Id.* at 1103. *Arias-Villanueva* does not show that our court later changed course in interpreting *Dunnigan*'s requirements, as the concurrence claims it does.

This brings us to *Castro-Ponce,* which is the primary subject of the concurrence's critique. *Castro-Ponce* simply clarifies *Dunnigan* by explaining that a sentencing court must make "express findings on all three prongs necessary for perjury to amount to obstruction of justice." 770 F.3d at 822. The concurrence

4

greatly overstates the impact and significance of this decision, claiming that our Circuit "discovered" new requirements for the perjury enhancement. In reality, the "express" findings rule is the same standard we have always applied, and it is functionally identical to *Dunnigan*'s language requiring "specific" findings.[1] The *Castro-Ponce* rule was reaffirmed by another panel in 2016. *United States v. Herrera-Rivera*, 832 F.3d 1166, 1175 (9th Cir. 2016). Although the *Herrera-Rivera* court remarked on the "rigid[ness]" of the *Castro-Ponce* rule, it also acknowledged that a requirement of express findings was "consistent with our precedents prior to *Castro-Ponce* . . . as well as the approach taken by some of our sister circuits." *Id.* (citations omitted).

On that note, we are not the only circuit that requires express findings on the elements of perjury. The *Castro-Ponce* rule "accords with" decisions from the Sixth Circuit and the Tenth Circuit. *Castro-Ponce*, 770 F.3d at 822; *see United States v. Kamper,* 748 F.3d 728, 747 (6th Cir. 2014) (reversing because the district court failed to make findings on materiality or intent); *United States v. Massey*, 48

---

[1] The concurrence contends that prior caselaw only required findings on materiality, and not on willfulness or false testimony—but that is not true. As discussed, the materiality requirement was embroiled in dispute because it was unclear if it was a legal issue or a factual one prior to the Supreme Court's decision in *Gaudin*. *See Jimenez-Ortega*, 472 F.3d at 1103-04. Our court had always required "specific" findings on the other two elements, and so does *Dunnigan*. *See, e.g., Oplinger*, 150 F.3d at 1070; *Shannon*, 137 F.3d at 1119; *Ancheta*, 38 F.3d at 1118.

F.3d 1560, 1573 (10th Cir. 1995) (noting that *Dunnigan* requires a district court to address "all three elements of perjury" and reversing because the district court failed to address materiality and willfulness). The concurrence cites another case, *United States v. Roberts*, where the Sixth Circuit explains that it does not always "insist on rigid adherence to these rules." 919 F.3d 980, 990 (6th Cir. 2019). But even then, the Sixth Circuit emphasized that it would not sustain an enhancement when a district court "made no findings whatsoever" on the elements of perjury because doing so would "fail[] to satisfy the most forgiving reading of *Dunnigan*."[2] *Id.* at 990-91.

There are good reasons to adopt such procedural safeguards surrounding the obstruction of justice enhancement. For one, perjury is a "serious charge" that often increases a defendant's prison sentence; it therefore "requires serious proof." *Castro-Ponce*, 770 F.3d at 823. An overzealous application of the obstruction of

---

[2] The concurrence also cites several cases from other circuits without clearly explaining why. The majority of these cases do not conflict with our holding in *Castro-Ponce*, and conversely, some are supportive. *See, e.g., United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995) (reversing enhancement where district court failed to specifically find the three elements of perjury or to "make a single global finding that encompassed the three essential elements"); *United States v. Tracy*, 36 F.3d 199, 203 (1st Cir. 1994) (upholding perjury enhancement where the district court made "each of the three ultimate findings of inaccuracy, willfulness, and materiality"); *United States v. Rodriguez*, 995 F.2d 776, 779 (7th Cir. 1993) (upholding enhancement where district court made sufficient findings as to false testimony, materiality, and willfulness).

6

justice enhancement can also infringe on the constitutional right of criminal defendants to testify in their own defense. *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987) (citation omitted). *Dunnigan* recognized that risk and sought to protect against the enhancement becoming "automatic." *Dunnigan*, 507 U.S. at 98. We, too, should "decline to adopt a more forgiving standard" that might "chill[] a criminal defendant's willingness" to take the stand. *Castro-Ponce,* 770 F.3d at 823.

Finally, the *Castro-Ponce* rule also helps ensure "reliability and reviewability" of the sentencing decision on appeal. *Id.* The case before us perfectly illustrates the practical necessity of the rule. The district court's only finding in support of imposing a § 3C1.1 enhancement was that "the jury necessarily found that [Sampson] perjured himself" by rendering a guilty verdict. This statement is woefully inadequate to permit meaningful review of whether Sampson's testimony met the elements of perjury. *Castro-Ponce* ensures that an appellate court will not have to "rely on inference to deduce" the reasons why the district court imposed the enhancement. *Roberts*, 919 F.3d at 991.

I respectfully disagree with the arguments in the concurrence, and I see no need to reexamine our holding in *Castro-Ponce*.[3]

---

[3] The concurrence goes to great lengths to attack my interpretation of *Dunnigan* and our cases applying *Dunnigan*. I invite the reader to review the cited cases and reach their own conclusions. I have no doubt that the reader will find *Castro-*



*Ponce* consistent with longstanding precedent from our circuit and our sister circuits.

*United States v. Sampson*, No. 21-30188

VANDYKE, Circuit Judge, concurring:

I agree with the majority decision, and write separately only to spotlight our court's mistaken rule dating from 2014 that a sentencing court must make explicit findings on all elements of perjury before it imposes a Section 3C1.1 sentencing enhancement. Nothing in the text or application notes of that section or in Supreme Court precedent requires such explicit findings. No other circuit has followed us on this lonesome detour. And our own court has only resignedly imposed the requirement since 2014, despite recognizing that it likely creates "too rigid a rule." *United States v. Herrera-Rivera*, 832 F.3d 1166, 1174 (9th Cir. 2016).

American sentencing courts historically enjoyed broad discretion in how to impose extra penalties on defendants who had perjured themselves at trial. *E.g.*, Seymour Harris, *Principles of Criminal Law* 175 (1880). Nothing in the text of Section 3C1.1 or its application notes as published in 1987 cabined this discretion by requiring a sentencing court to make explicit findings as to the perjury elements when it applies the enhancement. *See* U.S.S.G. § 3C1.1 (1987). Nor has any such requirement been added to the section's text or application notes since then. *See* U.S.S.G. § 3C1.1 (2021).

Supreme Court precedent does not compel a conclusion that such a requirement lies hidden somewhere behind the plain text of Section 3C1.1. In

*United States v. Dunnigan*, the Supreme Court clarified that, if a defendant objects to imposition of the enhancement, Section 3C1.1 requires a sentencing court to "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." 507 U.S. 87, 95 (1993). But the Court left open two different routes for a sentencing court to meet this obligation. *First,* it could make explicit, separate, and clear findings for each element of the alleged perjury. *Id. Second*, it could make a finding that "encompasses all of the factual predicates for a finding of perjury" when reviewed in light of the record. *Id.*

In the years immediately following *Dunnigan*, our sister circuits had no trouble understanding that the Court meant what it said when it preserved that second route of not requiring explicit findings on each element of alleged perjury. *See, e.g., United States v. Tracy*, 36 F.3d 199, 203 (1st Cir. 1994); *United States v. Boggi*, 74 F.3d 470, 479 (3d Cir. 1996); *United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995); *United States v. Laury*, 985 F.2d 1293, 1308 (5th Cir. 1993); *United States v. Rodriguez*, 995 F.2d 776, 778 (7th Cir. 1993); *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995); *United States v. Dobbs*, 11 F.3d 152, 155 (11th Cir. 1994).

Nor did our own court initially diverge from this consensus. The first time we applied *Dunnigan*, we noted that the Court in that case upheld a perjury enhancement even though the sentencing court had not even designated any specific item of false

2

testimony, and we thus concluded that a sentencing court need not explicitly make such findings provided "the record supports the district court's finding of perjury." *United States v. Arias-Villanueva*, 998 F.2d 1491, 1512 (9th Cir. 1993), *overruled on other grounds as recognized in United States v. Kahre*, 737 F.3d 554 (9th Cir. 2013). We repeatedly reaffirmed that understanding of *Dunnigan* in subsequent years, holding that "although it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, this is in no way required." *United States v. Oplinger*, 150 F.3d 1061, 1071 (9th Cir. 1998) (cleaned up); *see also United States v. Sager*, 227 F.3d 1138, 1144 (9th Cir. 2000) (upheld despite no explicit finding).

But we started to change our mind in 2007. In *United States v. Jimenez-Ortega*, we correctly extended the Supreme Court's reasoning from twelve years earlier in *United States v. Gaudin*, 515 U.S. 506 (1995), to require that the sentencing court, as factfinder, make *a* finding as to the materiality element of perjury before applying the Section 3C1.1 enhancement. 472 F.3d 1102, 1103–04 (9th Cir. 2007) (per curiam). Without further analysis, though, the *Jimenez-Ortega* panel then assumed without saying that this also meant the materiality finding needed to be explicit rather than discernible from the record. *Id*.

No other circuit court adopted that requirement before we plunged further down the path away from a natural reading of *Dunnigan* in *United States v. Castro-*

3

*Ponce*, 770 F.3d 819 (9th Cir. 2014). There, for the first time after more than two decades of reading and rereading *Dunnigan*, our court discovered a requirement that a sentencing court must make explicit findings not only as to materiality but as to *all* perjury elements before it permissibly could apply the Section 3C1.1 enhancement:

> [I]n light of the government's comment at oral argument that no case within our circuit has held that a finding of materiality must be express, we hold today that an express finding is required. To hold otherwise would eviscerate the rule announced in *Jimenez-Ortega*. Absent a requirement of express findings on all three prongs necessary for perjury to amount to obstruction of justice, we would have to speculate about the district court's legal conclusions on obstruction. Rather than engage in such speculation, we require the fact-finder to make those determinations explicitly for our review.

*Id.* at 822. The *Castro-Ponce* court did not ground this new requirement in the text of Section 3C1.1 or try to reconcile it with the outcome of *Dunnigan* itself. Nor did it explain how the requirement could have been necessarily implied in *Jimenez-Ortega* when our court had upheld a Section 3C1.1 enhancement just months earlier in a case where the sentencing court had *not* made express findings on all three perjury elements. *United States v. Armstrong*, 749 F.3d 842, 848 (9th Cir. 2014).

Judge Paez has a more modest view of *Castro-Ponce* than the *Castro-Ponce* panel itself had, reading the case as consistent with *Dunnigan*, our preceding caselaw, and the approaches of our sister circuits. But that view is distorted by misunderstandings of the cases he cites and of how they fit into a broader context of relevant cases he does not cite.

4

Those misunderstandings start with *Dunnigan* itself. Judge Paez assumes that when the Court said a sentencing court must "make independent findings" separate from a jury guilty verdict, the Court secreted into that language an additional two requirements that those findings be specific and express. He reads *Dunnigan* to "repeatedly say[] so," though he does not reference any language where the Court in fact said so even once. He instead infers those unstated requirements from two case quotations, neither of which supports his reading. *First*, the Court held that the "trial court must make findings to support all the elements of a perjury violation in a specific case." Yet nothing in that language necessitates specific and express findings. *Second*, the Court held that "the elements of perjury must be found with the specificity we have stated." Yet the Court in preceding pages had expressly identified two permissible degrees of specificity: (1) separate and clear findings on each element or (2) a general finding that encompasses all of the factual predicates for a finding of perjury. 507 U.S. at 95.

Perhaps sensing just how thin a reed of support those quotations offer, Judge Paez contends that *Dunnigan*'s factual record "further underscores the specificity of findings that is required." It does—but not in the way he thinks it does. The sentencing court in *Dunnigan* applied the enhancement with a cursory recitation of the perjury elements and a bald reliance on the guilty verdict. *Dunnigan*, 507 U.S. at 91, 95. It was only when the Court reviewed the sentencing court's statement

5

against the record that it found "ample support for the District Court's finding" and affirmed it. *Id.* at 95–96. Judge Paez posits that the "notion that *Dunnigan* allows a trial court to freely impose the perjury enhancement without making any specific findings is not consistent with what happened in that case." Respectfully, that *is* what happened in that case.

Judge Paez further asserts that our court's "consistent[]" interpretation of *Dunnigan* in the decades preceding *Castro-Ponce* also confirms the counterintuitive position that the Court explicitly permitted a sentencing court to make a general finding of perjury supported by the record, only to then implicitly render that option a nullity by requiring specific and express findings. But he again misreads the cases he cites. He reads *United States v. Shannon* to have required specific and express findings, but our court there only required that findings be "independent" from a jury's guilty verdict. 137 F.3d 1112, 1119 (9th Cir. 1998) (per curiam). He reads *United States v. Oplinger* for the same proposition, but it states the exact opposite: "although it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, this is in no way required." 150 F.3d at 1070. And he reads *United States v. Ancheta* the same way, but our court there merely held that the sentencing court's moderately specific findings were sufficient to satisfy *Dunnigan*—not that they were necessary. 38 F.3d 1114, 1118 (9th Cir. 1994).

A survey of our relevant caselaw beyond the few cases Judge Paez cites only

6

confirms that our court consistently—at least seven times!—did *not* require specific and express findings for each of the perjury elements up until *Castro-Ponce* itself imposed that requirement for the first time. *See United States v. Robinson*, 63 F.3d 889, 892 (9th Cir. 1995); *United States v. Garcia*, 135 F.3d 667, 671 (9th Cir. 1998); *United States v. Monzon-Valenzuela*, 186 F.3d 1181, 1184 (9th Cir. 1999); *Sager*, 227 F.3d at 1146; *United States v. Cordova Barajas*, 360 F.3d 1037, 1043 (9th Cir. 2004); *United States v. Armstrong*, 620 F.3d 1172, 1176–77 (9th Cir. 2010); *United States v. Taylor*, 749 F.3d 842, 848 (9th Cir. 2014). Some of those cases postdate *Gaudin*, and they collectively belie any assertion that "the 'express' findings rule is the same standard we have always applied."

Lastly, Judge Paez says other circuits also "require[] express findings on the elements of perjury" and that *Castro-Ponce* accords with their decisions. But his argument there fails in three ways.

*First*, he contends the Sixth and Tenth Circuits impose that requirement, even though those circuits have expressly said otherwise. The Sixth Circuit recently has at least twice affirmed that the second *Dunnigan* route is still valid: a sentencing court preferably should, but need not, make specific and express findings as to the perjury elements. *United States v. Castro*, 960 F.3d 857, 870–71 (6th Cir. 2020); *United States v. Roberts*, 919 F.3d 980, 990–91 (6th Cir. 2019). The Tenth Circuit has made the same point twice—including when applying the decision Judge Paez

7

cites for the opposite conclusion. *See United States v. Paup*, 933 F.3d 1226, 1235 (10th Cir. 2019); *United States v. Flonnory*, 630 F.3d 1280, 1287 (10th Cir. 2011).

*Second*, he cites three cases for the proposition that the First, Fourth, and Seventh Circuits support *Castro-Ponce*'s conclusion that *Dunnigan* requires specific and express findings on all three perjury elements. But none of the cited cases actually does. The Fourth Circuit case he cites reversed an enhancement because, as it expressly stated, the sentencing court did not satisfy *Dunnigan*'s requirements by making *either* specific findings *or* a single global finding that encompassed the perjury elements. *See United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995). Meanwhile, the First and Seventh Circuit cases he cites note simply that the sentencing court's specific findings there *sufficed* to satisfy *Dunnigan*, not that they were necessary. *See United States v. Tracy*, 36 F.3d 199, 201–03 (1st Cir. 1994); *United States v. Rodriguez*, 995 F.2d 776, 779 & n.3 (7th Cir. 1993). All three circuits have subsequently and unmistakably held that *Dunnigan* does *not* require specific and express findings. *United States v. Teganya*, 997 F.3d 424, 435–36 (1st Cir. 2021); *United States v. Savage*, 885 F.3d 212, 225–26 (4th Cir. 2018); *United States v. Price*, 28 F.4th 739, 757 (7th Cir. 2022).

*Third*, a survey of the remaining circuits finds none that requires specific and express findings of perjury for all cases like *Castro-Ponce* does. *See United States v. Rosario*, 988 F.3d 630, 633–34 (2d Cir. 2021) (per curiam); *United States v. Gray*,

8

942 F.3d 627, 633 (3d Cir. 2019); *United States v. Ajayi*, 64 F.4th 243, 251 (5th Cir. 2023); *United States v. Garcia*, 61 F.4th 628, 631–32 (8th Cir. 2023); *United States v. Stahlman*, 934 F.3d 1199, 1227–28 (11th Cir. 2019); *United States v. Montague*, 40 F.3d 1251, 1256 (D.C. Cir. 1994).

Almost a decade has passed since *Castro-Ponce*. Yet to borrow a line from a Green Day song that won a Grammy around the same time our court first set off on its own path, we still walk a lonely road, and we walk alone. No other circuit court appears to have followed our lead in reinterpreting *Dunnigan* to conflict with its own result. To the contrary, at least the Sixth and Eleventh Circuits have since then reaffirmed that *Dunnigan* does not require an explicit finding on *any* perjury prong. *United States v. Stahlman*, 934 F.3d 1199, 1227–28 (11th Cir. 2019); *United States v. Roberts*, 919 F.3d 980, 990–91 (6th Cir. 2019). And our own court has itself doubted the correctness of *Castro-Ponce*'s reading of *Dunnigan*, recognizing in *Herrera-Rivera* that "[a] good argument can be made that *Castro-Ponce* applies too rigid a rule." 832 F.3d at 1174. We should fix this unnecessary requirement and bring our court in line with the other circuits. Or I suppose the Supreme Court could do it for us.